UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHRIS B.,

                Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C19-5169-MLP

ORDER

## I.     INTRODUCTION

Plaintiff seeks review of the denial of his application for Disability Insurance Benefits. Paintiff contends the administrative law judge ("ALJ") erred in discounting certain medical opinions. (Dkt. # 10 at 1-2.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II.     BACKGROUND

Plaintiff was born in 1967, has a tenth-grade education, and has worked as a carpet cleaner, recycling truck driver, transfer garbage truck driver, construction driver, and short-haul truck driver. AR at 47, 242. He testified at the 2018 administrative hearing that he started working again part-time after the adjudicated period, in 2016. *Id*. at 751-52.

ORDER - 1

In July 2013, Plaintiff applied for benefits, alleging disability as of June 17, 2013.[1] AR at 99, 184-90. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 132-34, 136-42. After the ALJ conducted a hearing in December 2015 (*id*. at 39-67), the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 17-33. The Appeals Council denied Plaintiff's request for review (*id*. at 1-4), but the U.S. District Court for the Western District of Washington granted the parties' stipulation to reverse the Commissioner's decision and remand the case for further administrative proceedings. *Id*. at 798.

On remand, the ALJ held a hearing in October 2018 (AR at 744-65) and subsequently found Plaintiff not disabled. *Id*. at 635-52. Utilizing the five-step disability evaluation process,[2] the ALJ found:

> Step one: Plaintiff has not engaged in substantial gainful activity during the time between his amended alleged onset date (January 1, 2014) and his date last insured ("DLI") (December 31, 2015).
>
> Step two: Through the DLI, Plaintiff had the following severe impairments: obesity, musculoskeletal conditions described as cervical and lumbar spine degenerative disc disease, rotator cuff injury, and right knee arthritis; and mental health conditions described as borderline intellectual functioning, learning disorder, depression, anxiety, attention deficit disorder, and alcohol abuse in partial remission.
>
> Step three: Through the DLI, these impairments did not meet or equal the requirements of a listed impairment.[3]
>
> Residual Functional Capacity ("RFC"): Through the DLI, Plaintiff could perform light work with additional limitations: he could stand and walk two hours in an eight-hour workday, and sit six hours in an eight-hour workday. He could occasionally climb ramps and stairs. He could not climb ladders, ropes, or scaffolds. He could frequently balance, stoop, kneel, crouch and crawl. He could occasionally reach overhead bilaterally. He should avoid concentrated exposure to vibration and hazards such as unprotected heights and exposed moving mechanical parts. He could understand and remember simple instructions and known detailed tasks. He had sufficient concentration, persistence, or

---

[1] At the first administrative hearing, Plaintiff amended his alleged onset date to January 1, 2014. AR at 43.
[2] 20 C.F.R. § 404.1520.
[3] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER - 2

pace to complete simple, routine tasks for a normal workday and workweek with normal breaks. He could adjust to simple changes in workplace procedures.

Step four: Through the DLI, Plaintiff could not perform past relevant work.

Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff could have performed during the adjudicated period, Plaintiff was not disabled at any time during the adjudicated period.

*Id*.

Plaintiff now seeks judicial review of the ALJ's decision.

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. DISCUSSION

Plaintiff challenges the ALJ's assessment of certain medical opinions, arguing that the ALJ's reasons for discounting them were erroneous. For the reasons explained below, the Court finds no harmful legal error in the ALJ's assessment of the disputed medical opinion evidence.

At the outset, the Court notes that Plaintiff also contends that the ALJ read the remand order too narrowly and erroneously incorporated much of the reasoning from her prior decision into her new decision. (Dkt. # 10 at 3.) Plaintiff's argument depends on a mischaracterization of the remand order: the ALJ was not specifically instructed to consider or reconsider any medical opinion other than an opinion written by Jerry Fisher, M.D. *See* AR at 798, 807-08. The ALJ was instructed to reconsider other parts of the decision "as necessary" (*id*. at 798), and the fact that the ALJ incorporated much of her prior rationale suggests that she concluded it was not necessary to rewrite those portions. This conclusion does not demonstrate an erroneous reading of the remand order, and the Court rejects Plaintiff's suggestion otherwise.

### A. Legal standards

In general, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be

done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216.

### B. Peter Pfeiffer, M.D.

Dr. Pfeiffer examined Plaintiff in October 2011 and his medical source statement reads in relevant part: "The claimant can lift or carry 10 pounds continuously; due to his shoulder pain, neck pain and knee pain. . .There are manipulative limitations in that the claimant should reach with either arm only occasionally, due to his bilateral shoulder pain." AR at 439-40.

The ALJ noted that Dr. Pfeiffer did not indicate the maximum weight Plaintiff could lift or carry, but inferred that because he opined that Plaintiff could lift/carry 10 pounds continuously, he could lift more weight less frequently. AR at 646. This is a reasonable inference, and in any event the ALJ's RFC assessment is not inconsistent with Dr. Pfeiffer's opinion as to lifting/carrying because the ALJ found Plaintiff capable of lifting/carrying 10 pounds frequently, as did Dr. Pfeiffer. *See id*. at 641 (citing 20 C.F.R. § 1567(b) (defining light

work to require lifting/carrying 10 pounds frequently)). Accordingly, there is no error in the ALJ's assessment of Dr. Pfeiffer's opinion as to Plaintiff's lifting/carrying capacity.

The ALJ also noted that although Dr. Pfeiffer opined that Plaintiff was limited to occasional reaching in any direction, this opinion was undermined by the lack of clinical signs documented during the examination that would support this conclusion as well as by Plaintiff's lack of treatment for his shoulder condition and his daily activities. AR at 648. Instead, the ALJ found Plaintiff was limited to occasional overhead reaching, but had no restrictions in reaching in other directions. *Id*. Plaintiff disagrees with the ALJ's characterization of Dr. Pfeiffer's objective findings, noting that Dr. Pfeiffer found limited range of motion in Plaintiff's neck and tenderness in muscles in his neck and upper back. (Dkt. # 10 at 4-5 (citing AR at 437-39).) Even if those findings could provide some objective basis for Dr. Pfeiffer's opinion, Plaintiff has not shown that the ALJ's other reasons were wholly erroneous.

Specifically, the ALJ found that Plaintiff failed to obtain treatment for his shoulder condition since the alleged onset of disability in January 2014, and that this lack of treatment undermines Dr. Pfeiffer's opinion that this condition causes severe limitations. AR at 648. Plaintiff disputes this, claiming that he did in fact have treatment for his shoulder since 2013. (Dkt. # 10 at 5 (citing AR at 472, 547-59, 890-1069).) Some of Plaintiff's citations do not reference post-2013 treatment for his shoulders, and some of the cited evidence indicates that he is less limited as to reaching than even the ALJ found. *See, e.g.*, AR at 472 (2011 document mentioning shoulder rehabilitation in the past), 547-49 (2014 appointment note mentioning shoulder pain and the need for an updated MRI), 920 (December 2013 examination report indicating no reaching limitations). But to the extent that some of the evidence could be construed as some degree of treatment for his shoulders (*e.g.*, *id*. at 930-1068), those treatment

notes also document activities that contradict Dr. Pfeiffer's opinion regarding reaching, such as Plaintiff's work activities during the adjudicated period as well as motorcycle riding. *See, e.g.*, *id*. at 948 (Plaintiff reported driving a limousine for eight hours for work in December 2014), 999 (Plaintiff reported in November 2014 that he "helped his boss take a roof off a shed and then will put a metal roof on today"), 1003 (Plaintiff reported going on a "short motorcycle ride" in December 2014), 1005 (December 2014 reports driving a limousine for four hours at a time for work), 1014 (same), 1016 (same), 1018 (same), 1046 (Plaintiff reports working as a housecleaner in February 2015). Other treatment notes cited by Plaintiff also mention that he was working full-time or part-time during the adjudicated period. *See id*. at 902, 903, 904, 905 (working less than 10 hours/week as a housecleaner), 1057, 1059, 1061, 1067 (worked an eight-hour day in May 2015). Thus, the portions of the record highlighted by Plaintiff do not corroborate Dr. Pfeiffer's opinion, and instead severely undermine it. [4]

Plaintiff also argues that because Dr. Pfeiffer was aware of his daily activities, he must have believed that Plaintiff's activities were consistent with his opinion. (Dkt. # 10 at 5.) Dr. Pfeiffer's description of Plaintiff's activities is not as extensive as the ALJ's summary, however. *Compare* AR at 437-38 (Dr. Pfeiffer's summary) *with id*. at 645-46 (the ALJ's summary). Furthermore, Dr. Pfeiffer opined as to Plaintiff's condition in 2011 in light of the activities he knew of at that time, whereas the ALJ considered Plaintiff's capabilities and activities during the adjudicated period, years after Dr. Pfeiffer's evaluation. The Court finds that the ALJ reasonably construed Dr. Pfeiffer's opinion regarding Plaintiff's reaching to be inconsistent with his activities, and did not err in discounting the opinion on that basis. *See Rollins v. Massanari*, 261

---

[4] The Court is aware that the ALJ did not specifically mention Plaintiff's work activities during the adjudicated period in her decision, but the Court discusses that evidence here for the purpose of explaining why the treatment notes cited by Plaintiff do not in fact support his argument on appeal.

F.3d 853, 856 (9th Cir. 2001) (affirming an ALJ's rejection of a treating physician's opinion that was inconsistent with the claimant's level of activity).

C. **Paul Tesar, M.D., and Darin Swan, MPT, CSCS**

The record contains several opinions — including those from Dr. Tesar and Mr. Swan — regarding Plaintiff's capabilities after his 2008 shoulder injuries. Dr. Tesar opined in February 2010 that Plaintiff should avoid repetitive overhead lifting or shoulder-level work, and should not lift more than 10 pounds overhead or at shoulder level. AR at 348. Mr. Swan opined in April 2010 that Plaintiff could perform light to medium work at the waist level and above, but could rarely perfrom overhead manipulation or forward-reaching activities, and could only occasionally perform typing and driving. *Id.* at 422. The ALJ discounted those opinions as remote in time, and inconsistent with the more recent evidence regarding Plaintiff's shoulder range of motion and conservative treatment for the shoulder conditions. *Id.* at 649. The ALJ noted that the State agency physicians were able to review the earlier opinions in the context of the longitudinal record, and found that those opinions were entitled to more weight than the earlier opinions. *Id.*

Plaintiff contends that the ALJ erred in discounting Dr. Tesar's and Mr. Swan's opinions in light of subsequent evidence, because the ALJ failed to explain how the subsequent evidence contradicted the opinions of Dr. Tesar and Mr. Swan, and the ALJ also failed to note that at least one subsequent opinion from Dr. Fisher actually corroborated the opinions of Dr. Tesar and Mr. Swan. (Dkt. # 10 at 7.) This argument is disingenuous in light of the ALJ's thorough discussion of the subsequent medical evidence in other parts of the decision, as well as her explicit resolution of the conflicts in the evidence regarding Plaintiff's lifting, reaching, and manipulative limitations. AR at 642-48. The ALJ also discussed Dr. Fisher's opinion and explained why she

discounted it (*id.* at 648), and thus Dr. Fisher's opinion does not constitute a basis for assigning more weight to the opinions of Dr. Tesar and Mr. Swan.

Furthermore, the ALJ did not err in considering the extent to which Dr. Tesar and Mr. Swan were familiar with the longitudinal record. *See* 20 C.F.R. § 404.1527(c)(6) ("[T]he extent to which a medical source is familiar with the other information in your case record [is a] relevant factor[] that we will consider in deciding the weight to give to a medical opinion."). The ALJ accurately noted that Dr. Tesar and Mr. Swan were less familiar with the record before the ALJ than the State agency doctors, and this is a legitimate reason to give less weight to their opinions. AR at 648.

Plaintiff also disputes whether his subsequent normal range of shoulder motion contradicts the opinions of Dr. Tesar and Mr. Swan. Even if this rationale is not legitimate, the ALJ properly went on to note that Plaintiff received routine and conservative treatment for his shoulder conditions after the 2008 shoulder surgery. AR at 649. As discussed above, there is evidence of some treatment for Plaintiff's shoulder condition, but Plaintiff has not cited any evidence contradicting the ALJ's characterization of this treatment as routine and conservative. Chiropractic treatment and physical therapy are reasonably characterized as routine or conservative forms of treatment, and the evidence also shows that treatment was effective in alleviating Plaintiff's pain and increasing his functionality. *See, e.g.*, *id.* at 902-04 (documenting Plaintiff's ability to work full-time March-May 2015), 971 (Plaintiff rates his pain as 1-2 on a 1-10 scale), 974 (Plaintiff's pain has improved to "mild" by March 2015).

Although Plaintiff in his briefing describes his conditions as degenerative and expected to worsen over time (dkt. # 10 at 9), he also reported to his provider that he was able to work as a housecleaner for four hours per day in 2017, which would represent an increase in functionality

from the limitations he alleged during the adjudicated period. *See* AR at 1195. In any event, Plaintiff has not shown that the ALJ erred in considering the nature of his shoulder treatment, or in discounting Dr. Tesar's and Mr. Swan's opinion based on that routine, conservative treatment. *See Rollins*, 261 F.3d at 856 (upholding rejection of treating physician's opinion based on discrepancy between the opinion and the physician's description of the claimant and prescription of a conservative course of treatment). To the extent that any of the ALJ's reasons to discount the opinions of Dr. Tesar and Mr. Swan are erroneous, the ALJ provided independent specific and legitimate reasons that renders the erroneous reasoning harmless. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

**D.     Dr. Fisher**

Dr. Fisher, a treating physician, opined in January 2014 that Plaintiff had "multiple disabilities precluding repetitive physical work." AR at 472. In April 2015, he opined that Plaintiff could sit for an unlimited time and stand/walk less than two hours in an eight-hour workday, and lift/carry items up to 20 pounds only 0-5% of a workday. *Id.* at 921-26.

The ALJ discounted Dr. Fisher's January 2014 statement as vague because "repetitive physical work" is not defined and because this comment does not pertain to Plaintiff's RFC. AR at 648. Plaintiff argues that Dr. Fisher's comment "lends support" to the opinions of Drs. Pfeiffer and Tesar, and Mr. Swan, but this argument does not address the fundamental vagueness of Dr. Fisher's statement. (Dkt. # 10 at 12.) Plaintiff has not shown that the ALJ was unreasonable in finding Dr. Fisher's January 2014 statement vague, because the terms used by Dr. Fisher are not defined or clear in their meaning, and thus the Court finds the ALJ's interpretation was not erroneous.

from the limitations he alleged during the adjudicated period. *See* AR at 1195. In any event, Plaintiff has not shown that the ALJ erred in considering the nature of his shoulder treatment, or in discounting Dr. Tesar's and Mr. Swan's opinion based on that routine, conservative treatment. *See Rollins*, 261 F.3d at 856 (upholding rejection of treating physician's opinion based on discrepancy between the opinion and the physician's description of the claimant and prescription of a conservative course of treatment). To the extent that any of the ALJ's reasons to discount the opinions of Dr. Tesar and Mr. Swan are erroneous, the ALJ provided independent specific and legitimate reasons that renders the erroneous reasoning harmless. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

**D.     Dr. Fisher**

Dr. Fisher, a treating physician, opined in January 2014 that Plaintiff had "multiple disabilities precluding repetitive physical work." AR at 472. In April 2015, he opined that Plaintiff could sit for an unlimited time and stand/walk less than two hours in an eight-hour workday, and lift/carry items up to 20 pounds only 0-5% of a workday. *Id.* at 921-26.

The ALJ discounted Dr. Fisher's January 2014 statement as vague because "repetitive physical work" is not defined and because this comment does not pertain to Plaintiff's RFC. AR at 648. Plaintiff argues that Dr. Fisher's comment "lends support" to the opinions of Drs. Pfeiffer and Tesar, and Mr. Swan, but this argument does not address the fundamental vagueness of Dr. Fisher's statement. (Dkt. # 10 at 12.) Plaintiff has not shown that the ALJ was unreasonable in finding Dr. Fisher's January 2014 statement vague, because the terms used by Dr. Fisher are not defined or clear in their meaning, and thus the Court finds the ALJ's interpretation was not erroneous.

The ALJ discounted Dr. Fisher's April 2015 opinion because it was rendered after only three visits in 2011, was unexplained, and was inconsistent with the many normal objective findings as well as the routine, conservative course of treatment during the adjudicated period. AR at 648-49. The Court will consider each of these reasons in turn. As to the first reason, it appears that the ALJ misread Dr. Fisher's opinion as indicating that he saw Plaintiff three times in 2011; Dr. Fisher wrote that he had seen Plaintiff three times "from March 2011, including today (April 22, 2015)." *Id.* at 649, 921. That Dr. Fisher counted the April 2015 appointment as one of the three appointments suggests that he intended to indicate that he had seen Plaintiff three times between March 2011 and April 2015. In any event, the ALJ did not err in noting the limited nature of Plaintiff's treating relationship with Dr. Fisher, even if she erred in finding that Dr. Fisher only treated Plaintiff in 2011. *See* 20 C.F.R. § 404.1527(c)(6) ("[T]he extent to which a medical source is familiar with the other information in your case record [is a] relevant factor[] that we will consider in deciding the weight to give to a medical opinion."). Although Plaintiff suggests that Dr. Fisher must have reviewed notes from other providers in his clinic (dkt. # 10 at 12), there is no indication on Dr. Fisher's opinion that he did so and the ALJ's failure to engage in such speculation is not unreasonable or erroneous. Thus, although the ALJ inaccurately described the timing of Plaintiff's appointments with Dr. Fisher, this error is harmless because the limited number of appointments is nonetheless a valid reason to discount Dr. Fisher's opinion, because it suggests that he was not particularly familiar with Plaintiff's longitudinal functionality.

Next, the ALJ found that Dr. Fisher's opinion was unexplained. AR at 649. Plaintiff contends that this conclusion was "unsupported by reasoning" (dkt. # 10 at 13), but it is unclear how much more reasoning the ALJ could have provided with respect to Dr. Fisher's lack of

explanation. The April 2015 opinion is a checkbox form, which by its nature does not lend itself to extensive explanation, and furthermore Dr. Fisher left blank a section asking for explanation of his opinions as to Plaintiff's sitting, standing, and walking limitations. AR at 924. The ALJ properly considered the extent to which Dr. Fisher explained his opinions regarding Plaintiff's limitations. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relvant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

Lastly, the ALJ did not err in finding Dr. Fisher's conclusions to be inconsistent with the objective evidence and treatment history. The ALJ noted, for example, that Plaintiff exhibited normal gait in most examinations (AR at 649), and yet Dr. Fisher opined that Plaintiff "can't walk" (*id*. at 924). And as discussed above, Dr. Fisher's opinions regarding Plaintiff's shoulder limitations is inconsistent with his routine, conservative treatment for this condition. These inconsistencies are a specific, legitimate reason to discount Dr. Fisher's opinion. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record).

Because the ALJ provided multiple specific, legitimate reasons to discount Dr. Fisher's opinions, the ALJ's assessment of that evidence is affirmed.

**E.     Cheryl Brischetto, Ph.D.**

Dr. Brischetto examined Plaintiff in January 2011 and provided recommendations regarding workplace accommodations in connection with his vocational rehabilitation. AR at 351-61. The ALJ noted that Dr. Brischetto found that Plaintiff had auditory processing and learning difficulties, and recommended that directions to be presented to him slowly, one or two

at a time, without background noise. *Id*. at 649-50 (referencing *id*. at 360). The ALJ found that Plaintiff had been able to perform skilled work before and after Dr. Brischetto's examination, without the benefit of these accommodations. *Id*. at 650. The ALJ also noted that Dr. Brischetto diagnosed Plaintiff with attention deficit/hyperactivity disorder ("ADHD") (*id*. at 361), but that Plaintiff had never had any treatment for this condition and thus the ALJ found that it was less limiting than alleged. *Id*. at 644-45, 650.

Plaintiff argues that his work history does not contradict Dr. Brischetto's opinion because his work as a truck driver did not involve processing auditory information. (Dkt. # 10 at 14-15.) Plaintiff cites no authority for this proposition, and in any event the ALJ noted that Plaintiff's past jobs involved more than simple instructions, which would seem to be inconsistent with Dr. Brischetto's recommendations. AR at 650. Furthermore, Dr. Brischetto recommended the elimination of auditory distractions and Plaintiff emphasizes this recommendation (dkt. # 10 at 15), but driving a garbage truck or a tractor is "loud" work, which again suggests that Plaintiff was able to work without Dr. Brischetto's recommended accommodations. *See* Dictionary of Occupational Titles ("DOT") 905.663-010, 1991 WL 687707 (defining the garbage collector driver job as having a "loud" noise level); DOT 904-383-010, 1991 WL 687703 (same, as to the tractor-trailer-truck driver job). The ALJ reasonably found Plaintiff's work history to be inconsistent with the recommendations listed by Dr. Brischetto.

Plaintiff also disputes the ALJ's understanding of the connection between Dr. Brischetto's ADHD diagnosis and her recommendations. Plaintiff contends that because Dr. Brischetto did not tie her recommendations regarding the need for auditory/learning accommodations to Plaintiff's ADHD, the ALJ erred in discounting Dr. Brischetto's conclusions as influenced by discounted ADHD symptoms. (Dkt. # 10 at 15-16.) But the body of Dr.

Brischetto's opinion does connect Plaintiff's ADHD with his distractibility, as well as his need for additional accommodations to help him keep track of tasks, and these accommodations were mentioned in the paragraph of Dr. Brischetto's opinion that the ALJ discounted. AR at 356. Thus, because it does not appear that Dr. Brischetto compartmentalized her accommodations according to diagnosis, as Plaintiff suggests, the ALJ reasonably found that her discounting of Plaintiff's ADHD symptoms impacted the probative value of Dr. Brischetto's opinion.

Because the ALJ provided specific, legitimate reasons to discount Dr. Brischetto's opinion, this portion of the ALJ's decision is affirmed.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 10th day of September, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge